## KIRBY v. LOUISMANN–CAPEN CO.

### (District Court, W. D. Kentucky. March 9, 1914.)

**1. Courts ☞366 — United States Courts — Authority of Decisions of State Courts—"Joint-Stock Company."**

The holding of the Kentucky Court of Appeals that a private corporation is a "joint-stock company," within Civ. Code Prac. Ky. § 51, subsec. 6, providing that in actions against a joint-stock company, the members of which reside in another state, engaged in business in this state, the summons may be served on the manager, agent, or person in charge of such business in the county where the business is carried on, or where the cause of action arose, is binding on the United States District Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ☞366.

For other definitions, see Words and Phrases, First and Second Series, Joint-Stock Company.]

**2. Constitutional Law ☞309—"Due Process of Law"—Process to Sustain Judgment.**

"Due process of law" requires that, before any judgment in personam is rendered against a person, he shall be personally served with process notifying him of the nature and pendency of the proceedings in which the judgment is sought.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930; Dec. Dig. ☞309.

For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**3. Judgment ☞17—Foreign Corporations—Service of Process.**

Whether the service of process upon an alleged agent of a foreign corporation would support a judgment against the corporation depended on whether it was doing business in the state, and whether such person represented it in that business.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 25–33; Dec. Dig. ☞17.]

**4. Corporations ☞642—Foreign Corporations—Liability to be Sued.**

A foreign corporation, which, though it had no known or established place of business in Kentucky, had designated no person upon whom summons could be served, and had no property in the state, except such as it had acquired the equitable or legal title to by means of mortgages on musical instruments taken through its consignees, had been making sales of musical instruments previously shipped into the state for the purpose of being sold by its local consignees or agents, was transacting business in the state, so as to be subject to be sued there.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. ☞642.]

**5. Corporations ☞668—Officers—Sufficiency of Evidence.**

On a motion to quash the service of process against a foreign corporation, where letters characterizing the person upon whom service was made as the corporation's "Western representative" were written on the letter heads of the corporation which described the writer of the letters as the corporation's vice president and secretary, and the contents of the letters were not controverted, the conclusion was justified that the writer of such letters was the corporation's vice president and secretary, though neither title was annexed to his signature.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. ☞668.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. CORPORATIONS ⊚⇒668—FOREIGN CORPORATIONS—SERVICE OF PROCESS.**
Where a corporation was selling musical instruments in Kentucky, though it had no known or established place of business therein, a person characterized . by its vice president and secretary as the corporation's "Western representative," and who, while in Kentucky, solicited orders for musical instruments, was its agent in the business carried on by it in Kentucky, ·though it was claimed that he was sent to Kentucky for the sole purpose of collecting a claim, and process against the corporation was properly served on him, under Civ. Code Prac. Ky. § 51, subsec. 3, providing that, in an action against a private corporation, the summons may be served in any county upon the defendant's chief officer or agent who may be found in the state, or in the county wherein the action is brought upon the chief officer or agent found therein, and subsection 6, relative to the service of process in actions against joint-stock companies.
· [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. ⊚⇒668.]

At Law. Action by L. Kirby, trading as the Kirby Piano Company against the Louismann-Capen Company. On motion to quash the return of service of process. Motion denied.

Clarence Longacre and E. W. Carter, both of Louisville, Ky., for plaintiff.

Gifford & Steinfeld, of Louisville, Ky., for trustee.

EVANS, District Judge. This action was brought in the Jefferson circuit court, and on petition of the defendant, which is a New York corporation, was removed into this court. Upon the filing of the transcript the defendant, specially appearing for that purpose, moved the court to quash the return on the summons, which was issued in due form before the removal and placed in the hands of the sheriff. As the sheriff might do under the state practice, he, in writing on the summons, made the following indorsement, to wit:

"I hereby appoint S. J. Burks a special bailiff to execute this writ.
"A. M. Emler, S. J. C.,
"By Elmer Watson, D. S."

Burks made return on the summons in this language:

"Executed on the within-named defendant, Louismann-Capen Company (a corporation), by delivering a true copy of the within summons to J. B. McIntosh, he being the chief officer and agent of the defendant, Louismann-Capen Company, in the state of Kentucky, Dec. 10, 1913.        S. J. Burks, S. B."

Accompanying said return, and pursuant to the Code of Practice, was the affidavit of Burks that he is a white male person over 16 years old, not interested in the action, and not related to any party thereto, and that his return was true. On February 19, 1904, this court permitted Burks to amend his return, and his amendment, duly sworn to, was that:

"He served the process herein upon J. M. McIntosh in the city of Louisville, Jefferson county, Kentucky, on December 10, 1913; he being the chief officer and agent of the defendant herein in the state of Kentucky, and that his position with said company is that of managing agent for the state of Kentucky and Western representative. That at said time the defendant had no president, vice president, no secretary or librarian, no cashier or treasurer, and no clerk in Jefferson county, nor in the state of Kentucky.
"S. J. Burks."

---

The motion to quash the return as amended is based upon the grounds, stated generally, but not in detail: First, that the defendant did not and never had carried on business in Kentucky, had no place of business nor office in that state, and was a corporation organized under the law of the state of New York; and, second, that McIntosh, while in Kentucky for one special purpose of the defendant, namely, that of making a settlement with plaintiff for a demand the defendant had against the plaintiff, was never in any sense defendant's agent for receiving a summons in any litigation in Kentucky, and especially not in this case—the defendant never having, by certificate filed with the Secretary of State, designated said McIntosh as a person upon whom service upon defendant might be made.

In support of its contention the defendant read three affidavits, namely:

First. That of Louis S. Kurtzman, who stated that he is the president of the defendant, that defendant has never taken out a license to do business in Kentucky, that it never had a place of business in that state, that it never had an authorized agent therein upon whom process could be served, and that it had never filed any statement with the Secretary of State designating any person as agent upon whom process upon it might be served. He stated furthermore that McIntosh was not, at the time of the service upon him, in charge of defendant's known place of business anywhere in Kentucky, for the reason that defendant had no such place of business in Kentucky, and that said McIntosh was never a resident of Kentucky, but was a resident of Michigan, and was never an authorized agent of the defendant upon whom the process could be served under the laws of Kentucky.

Second. The affidavit of George C. Gordon stated that he was the defendant's treasurer, and he further stated much the same things as had the affiant Kurtzman, and also that, the plaintiff being justly indebted to the defendant on account of a shipment of musical instruments by defendant to plaintiff, the defendant sent James B. McIntosh to Louisville, Ky., to try to collect the debt from plaintiff, that McIntosh was only acting for the defendant in Kentucky in a single transaction, that the musical instruments for which defendant made the claim referred to were shipped from the state of New York by the defendant to the plaintiff in Louisville, Ky., in pursuance of written orders sent by the plaintiff to the defendant, and that the presence of McIntosh in Kentucky on December 20, 1913, was for the purpose of collecting the money due thereon, and for no other purpose.

Third. In his affidavit James B. McIntosh stated that he has never at any time had any property, business office, or place of business in Kentucky, and never carried on or transacted any business for defendant in that state, and has never at any time resided in Kentucky. He also stated that the plaintiff was justly indebted to the defendant on or about December 10, 1913, and he was sent by defendant to Louisville, Ky., to try to collect that indebtedness from the plaintiff, and that while he was there for that sole purpose, and no other, the process herein was served on him.

On his own behalf the plaintiff read his own affidavit, in which he stated that in December, 1913, the defendant did and that for a long

time prior to that date it had carried on business in Kentucky; that in this state it had, through its consignees in this state, sold pianos to various persons in Kentucky, and had taken in its own name mortgages thereon; that James B. McIntosh was defendant's agent in Kentucky, and that he was in Louisville, Ky., in December, 1913; and that he then, on defendant's behalf, solicited orders from persons in this city for pianos, namely, orders from J. Elmer Tuell, and from Rudolph-Wurlitzer Company, both doing business in Louisville, Ky. This affidavit of plaintiff exhibited two letters, signed Christian Kurtzman, in each of which McIntosh is spoken of as "our Western representative." The connection of Christian Kurtzman with the defendant when he wrote these letters appears only on the letter heads used in writing the letters, on which he is described as "V. Pres. and Secty.," doubtless meaning that he is defendant's vice president, as well as its secretary.

This being the substance of the testimony, we must determine whether there was such service of process on the defendant as gave it due notice of the nature and pendency of the action, and such as gives this court jurisdiction of the person of the defendant therein.

[1] Section 51 of the Kentucky Code of Practice provides (subsection 3) that:

"In an action against a private corporation the summons may be served, in any county, upon the defendant's chief officer, or agent, who may be found in this state; or it may be served in the county wherein the action is brought upon the defendant's chief officer or agent who may be found therein."

Said section 51 also provides (subsection 6) that:

"In actions against * * * a joint-stock company, the members of which reside in another state, engaged in business in this state, the summons may be served on the manager, or agent of, or person in charge of, such business in this state, in the county where the business is carried on, or in the county where the cause of action occurred."

The Court of Appeals of Kentucky, in International Harvester Co. v. Commonwealth, 147 Ky. 655, 145 S. W. 393, held that the words "joint-stock company," contained in section 51, subsec. 6, of the Kentucky Code of Practice, included a private "corporation," and indeed section 208 of the state Constitution seems to have required this construction, although ordinarily we should not suppose that a "joint-stock company" was necessarily a corporation. This court is bound by this interpretation, by the Court of Appeals, of the meaning of the words used in the Code, so far at least as the provision we have quoted is to be given consideration in determining the question before us.

Section 571 of the Kentucky Statutes is as follows:

"All corporations except foreign insurance companies formed under the laws of this or any other state, and carrying on any business in this state, shall at all times have one or more known places of business in this state, and an authorized agent or agents thereat, upon whom process can be served; and it shall not be lawful for any corporation to carry on any business in this state, until it shall have filed in the office of the Secretary of State a statement, signed by its president or secretary, giving the location of its office or offices in this state, and the name or names of its agent or agents thereat upon whom process can be served; and when any change is made in the location of its office or offices, or in its agent or agents, it shall at once file with the Secretary of State a statement of such change; and the former

agent shall remain agent for the purpose of service until statement of appointment of the new agent is filed; and if any corporation fails to comply with the requirements of this section, such corporation, and any agent or employé of such corporation, who shall transact, carry on or conduct any business in this state, for it, shall be severally guilty of a misdemeanor, and fined not less than one hundred nor more than one thousand dollars for each offense."

The Court of Appeals has held that the foregoing section does not annul the manner of serving process on corporations as prescribed by section 51 of the Code. Cumberland Co. v. Lewis, 108 S. W. 347, 32 Ky. Law Rep. 1300, and cases therein cited.

These being the statutory provisions found in the laws of Kentucky applicable to the motion to quash the return, and there being found in the federal statutes no statutory provision in the premises, the question of jurisdiction, after an interesting argument by counsel, has been very carefully considered by the court.

[2, 3] It goes without saying that due process of law, which is guaranteed by constitutional provision to every litigant before any judgment in personam is rendered against him, demands that notice in due form of law should be given him. In other words, it is required that he shall be personally served with process which notifies him of the nature and pendency of the proceeding in which such judgment is sought. It is not difficult to apply this rule in a case where an individual person is sued, but the matter becomes more complex when a corporation—an artificial person—is the defendant. In respect to such defendant, the question of legal service of process may, and in this case does, depend upon two propositions, namely: First, was the defendant doing business in this state? and, second, was McIntosh an agent who represented it in that business? Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 30 Sup. Ct. 125, 54 L. Ed. 272; St. Louis Southwestern Railway Co. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486; Peterson v. Chicago, Rock Island & R. R. Co., 205 U. S. 364, 390, 27 Sup. Ct. 513, 51 L. Ed. 841. These cases seem to limit us in this instance to the two test propositions we have stated, and we may exclude from consideration statements made in the affidavits which cannot affect them.

[4] 1. The first question is: Was the defendant transacting business in this state? True, the defendant had no known or established office or place of business in Kentucky. By no certificate filed with the Secretary of State had it designated any person upon whom summons could be served, and it had no property in Kentucky, except such as it had acquired the equitable or legal title to by means of the mortgages it had taken, through its consignees, upon musical instruments in this state, and some of which had been sold in this state by defendant's consignees here. But as there was no attachment or other seizure of property the facts regarding mere property are quite immaterial. The defendant did, sometimes through correspondence and sometimes through its consignees—or agents—in Kentucky, make sales of musical instruments to persons in this state during 1913, and such musical instruments, when sold, had already been shipped into Kentucky for the purpose of being sold here by such local consignees. McIntosh himself, as shown by sworn statements which are not con-

troverted, so far attempted to carry on that business as to have solicited in December last at least two persons located in this city to purchase from him, as agent of the defendant, musical instruments. While this fact of itself is equivalent only to an unsuccessful attempt to transact business in Kentucky, and therefore was not an actual transacting of business here, it nevertheless may shed some light on the question of what defendant was doing in Kentucky in 1913, and of the relation which McIntosh then bore to it. At all events, we think the testimony warrants the conclusion that the defendant corporation in 1913, and especially in the latter half of that year, was transacting business in Kentucky other than making a mere attempt to obtain a settlement of a claim it had against the plaintiff.

[5, 6] 2. Was McIntosh an agent to represent defendant in that business? meaning "the business it carried on" in Kentucky. This question, while possibly not so easily solved as the other, can, we think, be satisfactorily answered. In considering it we shall give weight to the two letters of Christian Kurtzman, made part of the plaintiff's affidavit, in both of which he characterizes McIntosh as "our Western representative." We do this because he wrote both of them on paper which carried the letter heads of the defendant, a fact which, in connection with the letters and the failure to controvert their contents, gives us the right to conclude that he was then writing as its vice president and secretary, though neither of those titles is annexed to his signature. The affidavits of the president and the treasurer of the defendant, as well as that of McIntosh, explicitly show that the latter was "an agent" of defendant, and was sent here by it in respect to its business, though they very explicitly state that the visit of McIntosh in December, 1913, was only to collect a claim against plaintiff which had been created by means of an order sent through the mails to plaintiff in New York, which, of course, standing alone, would not be a carrying on of business in Kentucky by defendant, nor, standing alone, would an authority limited to that claim extend far enough to meet the requirements of plaintiff's contention in the case. We think, however, under the cases cited, that it would be too narrow a construction of the rule they establish (especially in view of Christian Kurtzman's letters) to exclude from its scope and operation any agent which might represent the corporation in respect to any phase of the business it was, in the legal sense, carrying on in this state. As indicated, McIntosh, by soliciting orders here, construed himself to be defendant's agent to do that, a fact which has force when considered in connection with the letters of the vice president and secretary of defendant which showed McIntosh to be defendant's "Western representative," which term might well include Kentucky in the territory in which he represented the New York corporation.

Our conclusion is that McIntosh was plaintiff's agent in the business it carried on in Kentucky, the agency existing by virtue of his being defendant's Western representative—a designation which, we think, means that he was defendant's general agent in those parts of the country as far West as this state. This conclusion seems to find support, not only in the cases from the Supreme Court already cited, but also in Herndon-Carter Co. v. Norris, 224 U. S. 496, 32 Sup. Ct. 550,

56 L. Ed. 857; Premo Specialty Co. v. Jersey-Creme Co., 200 Fed. 353, 118 C. C. A. 458, 43 L. R. A. (N. S.) 1015; Brush Creek, etc., v. Morgan, etc. (C. C.) 136 Fed. 505; New Haven, etc., Co. v. Downingtown, etc., Co. (C. C.) 130 Fed. 605, to say nothing of Kentucky cases like Cumberland Co. v. Lewis, 108 S. W. 347, 32 Ky. Law Rep. 1300, and Nelson Morris & Co. v. Rehkopf & Sons, 75 S. W. 203, 25 Ky. Law Rep. 352.

A very recent case, namely, that of Cain v. Commercial Publishing Co., decided by the Supreme Court on January 19, 1914, which has been called to our attention, does not seem to have any application to the question under consideration.

It results that the motion to quash must be denied and overruled.