DIXON v. CORINNE RUNKEL STOCK CO. et al.

(District Court, E. D. North Carolina. June 1, 1914.)

No. 575.

1. ATTACHMENT (§ 4*)—RIGHT TO WRIT—CAUSE OF ACTION—NATURE—INFRINGEMENT OF COPYRIGHT—"COMMON-LAW CAUSE."

Rev. St. § 915 (U. S. Comp. St. 1901, p. 684), provides that in "common-law causes" plaintiff shall be entitled to similar remedies by attachment or other process against the property of the defendant, provided by the laws of the state in which the court is held, etc. *Held,* that since no authority exists in the United States for obtaining a copyright beyond the extent to which Congress has authorized it, a suit for infringement of a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

copyright is not a "common-law cause" within section 915, and hence plaintiff in such action is not entitled to attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 8–10; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 8, p. 7607.]

2. COURTS (§ 346*)—FEDERAL COURTS—COPYRIGHTS — ATTACHMENT — VACATION.

Vacation of an unauthorized attachment in a suit in a federal court for infringement of a copyright did not oust the court of jurisdiction under Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1092 [U. S. Comp. St. Supp. 1911, p. 136]) § 24, par. 7, providing that such court shall have exclusive jurisdiction of all suits at law or in equity arising under the patent and copyright laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 918; Dec. Dig. § 346.*]

Action by Thomas Dixon, Jr., against the Corinne Runkel Stock Company and others to recover damages for infringement of copyright. On motion to vacate an attachment. Granted.

Harry Skinner, of Greenville, N. C., and R. O. Everett, of Durham, N. C., for plaintiff.

Murray Allen, of Raleigh, N. C., and Thos. S. Fuller, of New York City, for defendants.

CONNOR, District Judge. Plaintiff, Thomas Dixon, Jr., instituted this action on January 4, 1906, by issuing a summons, and, at the same time, upon affidavit setting out his cause of action and alleging that defendants were nonresidents and were about to remove their property from the state with intent to defraud their creditors, obtained a warrant of attachment. The summons and warrant of attachment were delivered to the marshal who, as appears by his return, indorsed thereon, "served the within summons" on defendants. No return is indorsed on the warrant of attachment, which is attached to the summons. The marshal returned, with the original summons and warrant of attachment, an undertaking signed by defendant and R. H. Wright, in which it is recited that:

"Whereas John Dockery, deputy marshal * * * pursuant to a warrant of attachment in the above-entitled action, to him directed * * * did seize and levy on property of the above-named defendant Corinne Runkel Stock Co.," etc.

The condition of the bond is as follows:

"Now, therefore, we * * * undertake in the sum of five hundred dollars that the said Corinne Runkel Stock Co. * * * if said property be delivered to them, if the plaintiff recover judgment in said action, will pay the said plaintiff all cost and damages not exceeding $500.00, that may be awarded against them in said action."

On May 30, 1906, the court made an order making the Southern Amusement Company a party plaintiff. On said day plaintiff, Thomas Dixon, Jr., and the said Southern Amusement Company filed their complaint, alleging: That said Thomas Dixon, Jr., was the author of a dramatic composition known as and entitled The Clansman, the

scenes and characters of which are based upon two works of fiction, of which said Thomas Dixon, Jr., is also the author, entitled, respectively, The Leopard's Spots and The Clansman, both of which said works of fiction have been copyrighted, as prescribed by the Revised Statutes, etc. That the right to dramatize the said works of fiction was reserved by the said Thomas Dixon, Jr., and has never been sold, assigned, or in any manner disposed of by him to any other person. That said Dixon obtained a copyright for "a dramatic composition in the following words: "The Clansman—an American Drama. By Thomas Dixon, Jr." That he complied with all of the provisions of section 4957 of the Revised Statutes (U. S. Comp. St. 1901, p. 3409), etc. That said copyright was in force at the time of the acts of the defendants complained of. That by said copyright the said Thomas Dixon, Jr.—

"became entitled to and acquired, and there was in him vested the sole liberty of performing, copying, executing, finishing, and vending said composition for a period of 28 years from the 27th day of October, 1905, * * * and the said Thomas Dixon, Jr., is now and has always been the sole owner thereof."

The plaintiffs further allege that:

"The composition produced by said Thomas Dixon, Jr., is of great artistic value, and that, for a valuable consideration, he assigned the sole right to produce it on the stage to the Southern Amusement Company, and that the said dramatic composition has been presented upon the stage in public performances by a company under the direction and management of the Southern Amusement Company in every city of importance in the eastern and southern parts of the United States; that the income derived from the public performance of the said dramatic composition is the sole means of support of the said Thomas Dixon, Jr., and the principal source of income to the Southern Amusement Company."

The complaint further alleged: That the defendant company, at Raleigh, N. C., and other cities, since the assignment by the said Thomas Dixon, Jr., to the Southern Amusement Company of the sole right to produce it in public, publicly performed and presented for profit a dramatic composition in all things substantially as the copyright composition of the said Thomas Dixon, Jr., and in all things, to all intents and purposes, an actual copy or reproduction thereof, or an actual copy or reproduction of a material part of said dramatic composition; that the unlawful and unauthorized composition thus produced was called In Reconstruction Days. That the acts of the defendants in producing and exhibiting the said unlawful dramatic composition was an infringement of plaintiffs' rights, and greatly to their damage.

"That, by reason of the premises and by force of the statutes in such cases made and provided, and more particularly section 4966 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3415), an action has accrued to the complainants to demand and have from the defendants, and each of them, the sum of $100, forfeited for the first public performance or representation of the said copyrighted dramatic composition, or a material part thereof, and $50 for every public performance thereof."

The plaintiffs demand judgment: First, for $400 penalties; second for $100 for the first performance, and $50 for each of the six subsequent performances; third, $500 damages resulting from the unlawful

production of the said copyrighted dramatic composition. They also demand that defendants account for the profits arising from the unauthorized performance, etc. Defendants, in their answer, denied all of the material averments of the complaint.

[1] Defendants moved the court to discharge and vacate the .attachment, assigning as grounds therefor: First, that it appeared by the admissions in the complaint that Thomas Dixon, Jr., had sold to the Southern Amusement Company, for a valuable consideration, the sole right to produce the dramatic composition entitled The Clansman, and therefore had no interest in the action at the institution thereof; second, because the action is brought to enforce the collection of penalties and damages given by section 4966 of the Revised Statutes of the United States, and, not being a common-law action entitling plaintiff to the ancillary remedy of attachment as provided by section 915 of the Revised Statutes of the United States. The defendants rely upon the language of section 915, Revised Statutes, 4 Federal Statutes Annotated, 577 (U. S. Comp. St. 1901, p. 684), to sustain their contention that no attachment could issue in this case. It provides that:

"In common-law causes in the Circuit and District Courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now .provided by the laws of the state in which such court is held for the courts thereof."

The North Carolina Revisal, § 758, provides that a warrant of attachment against the property of one or more defendants may be granted—

" * * * when the action is to recover a sum of money only, or damages for one or more of the following causes: * * * (3) Any other injury to real or personal property, in consequence of negligence, fraud or other wrongful act."

The inquiry, therefore, is whether the complaint sets forth a "common-law cause," as distinguished from a statutory cause of action. It has been held that, in the United States, no authority exists for obtaining a copyright, beyond the extent to which Congress has authorized it. A copyright cannot be sustained as a right existing at common law; but, as it exists in the United States, it depends wholly on the legislation of Congress. Wheaton v. Peters, 8 Pet. 591, 8 L. Ed. 1055. In that case a learned and exhaustive discussion of the interesting subject was written by Mr. Justice McLean for the majority, and Mr. Justice Thompson dissenting, in which the English cases were reviewed.

In the case of Donaldson v. Beckett, 4 Burr. 2408, the House of Lords resolved:

First. That at common law an author of any book, or literary composition, had the sole right of first printing and publishing the same for sale; that he was entitled to an action against any person who printed, published, and sold the same without his consent.

Second. That when he published and printed such book, or literary composition, he surrendered such right, and that any other person might afterwards reprint and sell, for his own benefit, such book or literary composition against the will of the author.

Third. That the right of action which the author had at common law was taken away by statute 8 Anne, and that by said statute he is precluded from every remedy "except on the foundation of the said statute and on the terms of the conditions prescribed thereby." Judge McLean says:

"It would appear, from the points decided, that a majority of the judges were in favor of the common-law right of authors, but that the same had been taken away by the statute, * * * and that the literary property of an author in his works can only be asserted under the statute."

After discussing the grant to the Federal Congress to legislate upon the subject and the acts passed by Congress relating to it, he says:

"Congress then, * * * instead of sanctioning an existing right, as contended for, created it. * * * From these considerations it would seem that if the right of the complainants can be sustained, it must be sustained under the acts of Congress."

Mr. Justice Thompson vigorously dissented from the conclusion reached by the court, in an interesting review of the English decisions. In Globe Newspaper Co. v. Walker, 210 U. S. 356, 28 Sup. Ct. 726, 52 L. Ed. 1096, Mr. Justice Day says that Wheaton v. Peters has been frequently followed and approved. That:

"In this country the right of an author to multiply copies of books, maps, etc., after publication, is the creation of federal statutes. These statutes did not provide for the continuation of a common-law right, but, under constitutional authority, created a new right."

He concludes that the remedies given by the statutes "are the only ones open to those seeking the benefit of the statutory right thereby created." This conclusion is based upon the principle stated in Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376, that:

"A general liability created by statute without a remedy may be enforced by an appropriate common-law action. But where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed."

In the enumeration of the statutes giving a remedy for infringement of copyrights, the court includes section 4966. Saake v. Lederer, 174 Fed. 135, 98 C. C. A. 571. While, in the complaint herein, it appears that the draftsman intended to combine several causes of action to meet the complications caused by the joinder of the proprietor of the copyright, Thomas Dixon, Jr., and the Southern Amusement Company, to whom he had assigned the right to produce The Clansman, in the thirteenth paragraph, the cause of action given by section 4966 is set forth, and, as we have seen, this is the basis of the right to maintain the action. It is elementary principle that statutes, giving the ancillary remedy of attachment should be strictly construed—they should be confined to those causes of action which are clearly within the language of the statutes. This distinction between a right of action given by the common law from one dependent upon a statute is well understood in our jurisprudence. In using the term "common-law causes" in section 915, Revised Statutes (U. S. Comp. St. 1901, p. 684), it must be assumed that the Congress had this distinction in mind, and intended that it should be observed. It is not allowable to disregard it,

or by interpretation to explain it away. The motion to vacate the warrant of attachment is granted.

[2] This does not, however, oust the jurisdiction of the court, or work a dismissal of the action. Schunk v. Moline, etc., Co., 147 U. S. 500, 13 Sup. Ct. 416, 37 L. Ed. 255. Exclusive jurisdiction of "all suits at law or in equity arising under the patent and copyright laws" (Jud. Code, § 24, subsec. 7, § 256) is conferred upon the District Court of the United States.

An order may be drawn discharging and vacating the warrant of attachment.