## UNITED STATES v. PACIFIC FORWARDING CO., Limited, et al.
### No. 20884.

District Court, W. D. Washington, N. D.
Oct. 26, 1934.

Sam E. Whitaker and Tom DeWolfe, Sp. Assts. to Atty. Gen., and J. Charles Dennis, U. S. Atty., of Seattle, Wash., for the United States.

Eggerman & Rosling, of Seattle, Wash., for defendants.

NETERER, District Judge.

The plaintiff seeks to recover from the defendants for customs duties, internal revenue on and value of liquors fraudulently imported into the United States. The corporate defendants, it is charged, are creatures by charter of the laws of the province of British Columbia, Dominion of Canada, having their principal place of business in Vancouver, except the Brewers & Distillers of Vancouver, Limited, is chartered under the laws of the

Dominion of Canada, with principal office in Vancouver.

The individual defendants are residents of British Columbia, Canada, except Samet, who is a resident of this district. George and Henry Reifel were owners, it so appears on trial here, of two hundred thousand shares out of six million and some shares of the Brewers & Distillers of Vancouver, Limited, the holding company of the stock of the other corporate defendants, acquired by consolidation and purchase of various properties and stocks of existing concerns, and stock was held by Henry and George Reifel and four other stockholders under a voting trust agreement which continues for twenty years from creation in 1924.

It is charged that the nominal heads of all the defendant corporations were wholly dominated by Henry and George Reifel and were subject to their control; that a conspiracy was formed by the Reifels and others named, the object of which was to smuggle into the United States liquors and avoid customs duties and internal revenue, as provided by the laws of the United States, and in pursuance thereof did smuggle into the United States $10,000,000 worth of liquors; that the duties thereon are $6,000,000, and the internal revenue $1,250,000.

Service of summons and complaint were made upon Henry and George C. Reifel and Samet in this district, as individuals, and the corporate defendants were served by serving George C. Reifel, as agent of the British Columbia Distillery Company, Limited, Vancouver Brewers & Distillers, Inc., and the Vancouver Breweries, Limited; and by serving Henry Reifel, as officer and agent, with copy of summons and complaint for each of the following defendants: Pacific Forwarding Company, Limited, the Atlantic-Pacific Navigation Company, Limited, the Gulf Investment Company, Limited, the Vancouver Brewers & Distillers, Limited, the Vancouver Breweries, Limited, and the British Columbia Distillery Company, all in this district.

The plaintiff has attached many thousands of dollars worth of liquor, garnisheed much money in banks and other sources of indebtedness.

Under special appearance, the corporate defendants, severally, move to quash the service and discharge the writs of attachment and garnishment; first, because no copies of the complaint were served for the corporate defendants; second, the court is without jurisdiction by law to entertain such writs.

Special appearance as to the Pacific Forwarding Company, Limited, Atlantic-Pacific Navigation Company, Limited, and the Gulf Investment Company, Limited, have been withdrawn.

As to the Brewers & Distillers of Vancouver, Limited, the court must find that it was not doing business in this district or in the United States at the time of service of the summons and complaint, on July 6, 1934. The court is not prepared to say, upon the record in this case, under the allegations of conspiracy, that there is disclosed such a condition as would warrant the court in finding, even though some representatives of the company were in this district conspiring against the laws of the United States, that it was doing business within the intent of the law. It is not contended they were conspiring on the date of service.

I think the British Columbia Distillery Company, Limited, was doing business in this district on the date of service in such manner and to such an extent as to warrant the inference that it was present in this jurisdiction, and that service was made upon the general manager and agent of the company, who was in this jurisdiction on said defendant's business, and also to consider with Hemrich Brewing Company (in which the holding company defendant's stock was the Brewers & Distillers of Vancouver, Limited, holding a large block of stock) the advisability of establishing a distillery or a rectifying plant on this side of the boundary line. I do not think that the first objection, that copy of the complaint was not served, can obtain. While the return of the officer is ambiguous, yet when the return is closely scrutinized, we find that the only ambiguity in the return is that three words were left out of the return. After "a copy of the complaint," there is omitted "for each defendant." The officer who made the service was a holdover from the former administration, and the time for which he was retained has expired, and another man has been appointed; so that no amended return can be made, because the serving officer cannot do an official act now. The court must therefore rely upon other proof as to whether the words "for each defendant," should be supplied.

Every summons and complaint has been traced from the Attorney General's office to the agents of the defendants. I think the affidavits of Mr. Whitaker, who prepared the complaint, his secretary, Mrs. Pete, the clerk of this court who certified the copies of all

of the complaints, the delivery of these to Mr. Fraser, who delivered them to Mr. Green, and there, by telephonic direction of Mr. Whitaker, who was in Vancouver, these copies were all checked over by Green in the presence of Fraser. Each set was attached by paper clips, and placed in separate bundles and handed to the deputy United States marshal for service. A copy of the summons and complaint was served on R. Samet, a copy on Henry Reifel, and a copy on George C. Reifel, each receiving a copy of summons and complaint, and, in addition, to Henry Reifel was given a bundle of summonses and complaints for corporate defendants. He received the largest bundle, and George C. Reifel received the smaller bundle. All summonses were to all defendants and summons and complaint, one for each defendant, were thus checked over and each summons and complaint fastened by paper clips and put in bundles, one for Henry Reifel, and one for George C. Reifel; one for Henry Reifel as agent for each corporation he represented, one to George C. Reifel as agent for each corporation he represented, by the serving officer; and one for Samet.

It is conceded that when the papers were served, the defendants were under arrest, and there was much excitement, and when the attorneys who were sent for arrived, attention was given to the criminal matter. The defendants were not much concerned with the civil matter at the time, but were exercised about the criminal arrest, as stated by defendant's attorney at bar.

It is shown that the papers served were laid upon the table by the Reifels after they had been served, that other parties examined the papers. Mr. Henry Reifel stated, and perhaps George, as well, that he wanted a copy of those papers for himself. This also shows that there were more copies than one for each Reifel. When he made his affidavit in Mr. Eggerman's office as having been served one copy of the complaint and one copy of the summons, the statement was based on his request for a copy, after copies for all had been served upon the Reifels, and all laid on the table and were picked up by others.

I am convinced beyond any question of doubt that he was in error, and that George was in error, also, when he stated that they were served only one copy of the summons and one copy of the complaint. They only took one copy of the summons and one copy of the complaint with them, and the others were taken by others after they had laid there after service. I am convinced that the service was regularly made, and that the court, in the furtherance of justice, should say that "for each defendant" should be considered by the court as if inserted in the return. The record thus conclusively shows valid service in this jurisdiction.

Upon the second step, the court's jurisdiction is limited. The court has no inherent power (Ex parte United States, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355), and may not proceed in attachment unless the power is given by statute. And garnishment is a statutory remedy. United States v. Bailey (D. C.) 52 F.(2d) 286, 287.

It is admitted at bar that George C. Reifel was the general manager of the British Columbia Distillery Company, Limited.

The record must show valid service and doing business in the state at the time. 18 Fletcher, pp. 418–421. "The jurisdiction * * * does not rest upon a fiction of constructive presence, like 'qui facit per alium facit per se.'" Bank of America v. Whitney, 261 U. S. 171, 43 S. Ct. 311, 312, 67 L. Ed. 594. Nor does the Conformity Act (section 726, USCA, title 28) operate to enlarge federal court jurisdiction, but jurisdiction rests upon substantive law. 18 Fletcher on Corporations, 330, etc. The conduct of the corporation in the state must be such as to warrant the inference that it is present, and process must be served on an authorized agent. Philadelphia & R. Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710. The conduct of the defendant corporation clearly shows presence in the state. Nor can a foreign corporation be brought into a state by its agent. Chipman, Limited, v. Thomas B. Jeffery Co., 251 U. S. 373, 40 S. Ct. 172, 64 L. Ed. 314. The affidavits of the defendants are contrary to acknowledged conduct and to the known facts.

That the British Columbia Distillery Company, Limited, was doing business is shown by the two cars of whisky shipped June 29th over the Great Northern Railway from Vancouver to Seattle and held July 6th, date of service of the writ. The First National Bank had a balance of $43,655.57 on date of service, and liquors held in warehouse or on shipping bill subject to defendant's order, holding same for release on its order for commercial use.

Mr. Duncan, of the state liquor control board, wholly disinterested, in his affidavit filed October 10, 1934, states:

"He is the Chief Assistant of the Washington State Liquor Control Board, and has been since the organization of the Board, on about the 29th day of January, 1934; that as such he has handled the account of the Washington State Liquor Control Board with the British Columbia Distillery Co., Ltd., during the entire time of the dealings of the Board with this distillery; that in the latter part of February, or the early part of March, 1934, an arrangement was made with this Distillery Company, represented by the World Importers, Inc., of Seattle, Washington, which company in turn was represented by Warren Sheedy and a man by the name of West, for the making of purchases of the liquor of the British Columbia Distillery Co., Ltd., from time to time. That at first shipments were made direct from the British Columbia Distillery Co., Ltd., to the Washington State Liquor Control Board; that later an arrangement was made whereby liquor was shipped by the British Columbia Distillery Co., Ltd., prior to purchase by the Washington State Liquor Control Board, to Seattle, and there warehoused in the warehouse of the Board, under a bailment arrangement, under which the liquor remained the property of the British Columbia Distillery Co., Ltd., until such time as the Washington State Liquor Control Board should decide to purchase it, in whole or in part. Thereafter, from time to time, purchase orders would be sent to the British Columbia Distillery Co., Ltd., in care of Warren Sheedy, 308 American Bank Building, Seattle, Washington, a copy of which typical purchase order of this sort is attached hereto, as Exhibit 'A'. Upon receipt of these purchase orders, the British Columbia Distillery Company, Ltd., through their representative, World Importers, Inc., would pay the customs duty on the liquors ordered, remove them from the customs bond, and deliver them to the Washington State Liquor Control Board, in its warehouse, at Seattle, Washington. Thereupon, the British Columbia Distillery Company, Ltd., would invoice the Board for the liquor so delivered to it. A typical one of these invoices is attached hereto, as Exhibit 'B'. These invoices were certified as correct by Warren Sheedy, who styled himself as 'Representative The British Columbia Distillery Co., Ltd.' They were received by the Board from the address of 308 American Bank Building, Seattle, Washington. Checks in payment for this liquor were made out to the British Columbia Distillery Co., Ltd., and were mailed by the Board to this company in care of Warren Sheedy, 308 American Bank Building, Seattle, Washington. Two of these cancelled checks, Nos. 1480 and 1658, respectively, are attached hereto as Exhibits 'C' and 'D' [contents of exhibits are later herein stated], respectively, but with the understanding that they will be detached from this affidavit and returned to the Washington State Liquor Control Board as soon as photostatic copies thereof can be made and substituted therefor. The endorsement on these checks is typical of the endorsement on all checks sent in payment for this liquor (one was endorsed, 'Deposit to credit of account The British Columbia Distillery Co., Ltd., per Geo. W. Twittey, Secy-Treas.'; the other was endorsed: 'Deposited to credit of British Columbia Distillery Co., Ltd., and absence of endorsement guaranteed. Seaboard Branch the Dexter Horton Nat'l. Bank.')

"Affiant is the only representative of the Washington State Liquor Control Board who has ever handled the British Columbia Distillery Company, Ltd., account, except that their representatives have on several occasions appeared before the Board and this affiant; and his entire dealings with respect thereto have been with Warren Sheedy and a man by the name of West, as above stated, except that on one occasion a representative of the British Columbia Distillery Company, Ltd., from Vancouver, B. C., paid him a good will visit."

Exhibit A, attached as stated: "Copy Purchase Order Washington State Liquor Control Board, Date June 19, 1934, to British Columbia Distillery Company, Ltd., Address c/o Warren Sheedy, 308 American Bank Bldg., Seattle. Please supply the following as directed and bill Washington State Liquor Control Board. Ship to us, at Stacy-Lander Warehouse, Seattle, Wash. F.O.B. Seattle, Delivery required immediately, 100 cases B. C. D. Monogram Rye, Imp. Qts., $40.80 per case, 100 cases B. C. D. Monogram Rye, pts., $33.60 per case. Above covers stock shipped to us under bailment agreement, and which we have removed to active stock. It is now in order for you to invoice us. Terms 2% 10 days—90 days net. Washington State Liquor Control Board by ————."

Exhibit B, also attached as stated: "Vancouver, B. C., June 19, 1934. 308 American Bank Building, Seattle, Wash. Washington State Liquor Control Board, Olympia, Washington, to the British Columbia Distillery

Company, Ltd., Dr., New Westminister, B. C., Ex-Bailment #251–W–82–83–85.

| | | |
|---|---|---|
| 100 cs. BCD Monogram Rye Imps. | $40.80 | $4,080.00 |
| 100 cs. BCD Monogram Rye Pints. | 33.60 | 3,360.00 |
| | | $7,440.00 |

Discounts allowed on the F.O.B. Distillery Price. 2% 10 days, 1% 30 days, 90 days net.

| | |
|---|---|
| 100 cs. Imps. @ $15.00 | $1,500.00 |
| 100 cs. Pints @ 13.00 | 1,300.00 |
| | $2,800.00 |

All 90 Proof, Six Years Old, Bottled in Bond. Duty and Internal Revenue paid. Bear U. S. Internal Revenue Stamps and Washington Liquor Control Board Stamps. I hereby certify this invoice true and correct. Warren Sheedy, Representative The British Columbia Distillery Co. Ltd."

Exhibits C and D are two checks, each in the sum of $7,384, one under date of June 18, 1934, and the other June 29, 1934, from the Washington state liquor control board to the British Columbia Distillery Company, Limited, both of which were deposited to the credit of the British Columbia Distillery Company, Limited, in the Seaboard branch of the First National Bank of Seattle, on June 22 and June 30, 1934, respectively.

There is not an earmark by established conduct other than the distillery was present and doing business in this state covering all the time from the beginning, in January, 1934, including the day of service of the summons and complaint. The affidavits of Wills, Twittey, Tobin, and George Reifel cannot change what was done. "Actions speak louder than words," and, more especially when corroborated, as here, by the plaintiff's affidavits; and the further fact that first and before the arrangement entered into the latter part of February or the first part of March, 1934, liquor shipments were made direct to the state liquor control board must not be overlooked in view of the service and statutes relating thereto. The state of Washington had 1,100 cases of liquor of the distillery company. The liquor was held in warehouse on shipping bills subject to release on defendant's order.

The court judicially knows that the state liquor control board was operating thirty-nine liquor stores and seventy-one agencies where liquor could be obtained.

This case rests upon its own peculiar facts. Duke v. Pioneer Mining & Ditch Co. (D. C.) 280 F. 883, and cases cited are obviously grounded on different facts. The court may also judicially know [Greeson v. Imperial Irrigation Co. (C. C. A.) 59 F.(2d) 529; Chicago, M., St. P. & P. R. Co. v. Hedges et al. (D. C.) 5 F. Supp. 752] that an indictment was returned against the defendants Henry and George C. Reifel on July 26, 1934; that Henry Reifel and George C. Reifel, defendants in said indictment, posted bond in the sum of $100,000 each for appearance before the court; that thereafter, their causes being regularly called, the defendants failed to appear. Henry Reifel, by his attorneys, asked two weeks' continuance because of illness, which was granted, and the bail for George C. Reifel was forfeited At the appointed time the case of United States v. Henry Reifel was duly called, and he failed to appear, and his bail was forfeited, and such proceedings were had that judgment was entered against the defendants and surety in the amount of the bail, $200,000, and interest and costs, which were paid into the registry of the court.

The defendant British Columbia Distillery Company, Limited, came into the state and obviously did business in the state on the date and time of service, appointed no agent pursuant to state statute upon whom process could be served, and the general manager, George C. Reifel, and stockholder was found in the state transacting business in the state having relation to the business in issue, and by service on him as general manager, the distillery company was legally notified of pendency of this action. The corporation could not do business in the state without exposing itself to liability to process on it for violation of law. Henrietta Mining & Milling Co. v. Henry Johnson, 173 U. S. 221, 19 S. Ct. 402, 404, 43 L. Ed. 675; Foster v. Charles Betcher Lbr. Co., 5 S. D. 57, 58 N. W. 9, 23 L. R. A. 490, 49 Am. St. Rep. 859. See, also, Rice & Adams v. Lathrop, 278 U. S. 559, 49 S. Ct. 220, 73 L. Ed. 480.

A corporate charter granted in one state or nation does not subject the corporation to the laws of another state or nation, unless by doing business therein and availing itself of the protection of such laws. St. Clair v. Cox, 106 U. S. 350, 355, 359, 1 S. Ct. 354, 27 L. Ed. 222. The benefits are reciprocal and mutual. This sovereign extended to the defendants the privilege of doing business within its borders and the protection af-

forded by its laws, and the British Columbia Distillery Company, Limited, submitted itself to this jurisdiction for the redress of all wrongs committed, but designated no agent, and must be held to have thereby consented to have process served on its general agent for any violation of law in carrying forward any enterprise. Kelly v. Johnson Nut Co. (C. C. A.) 38 F.(2d) 177. Section 3854, Rem. R. S. of Washington, and section 226 (8) and (9) must be read together, and, as so read, service is sufficient. "It would be 'intolerable injustice' to say that the defendant is not suable here. * * * Fair play and orderly administration of justice require that the defendant answer to the courts of this jurisdiction for the injury complained of." Knutson v. Campbell River Mills, Ltd. (D. C.) 300 F. 241, 242.

■ That the British Columbia Distillery Company, Limited, was doing business in this district is shown also by the affidavits filed by A. B. Morgan, Lester McCash, and George W. Duncan. [Grams v. Idaho National Harvester Co., Ltd., 105 Wash. 602, 178 P. 815; Kirby v. Louismann-Capen Co. (D. C.) 221 F. 267, 271, 272; Irons v. Simeon L. & George H. Rogers (C. C.) 166 F. 781; International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; Frontier Steamship Co. v. Franklin Steamship Co. (D. C.) 233 F. 127], aside from the activity of the said defendant in and out of the state. These affidavits are denied by the defendant company, but the known facts corroborate said affiants' statements. In their affidavits the defendants all specifically deny that any wrong had ever been done by the defendants, but upon this hearing that is an issue that the court cannot determine. But of the matter in issue, I am satisfied from the acts done and statements made, it was doing business.

■ No service provided is exclusive, but may be considered under the several provisions of statute as a whole. Knutson v. Campbell River Mills, Ltd., supra; Barrett Mfg. Company v. Kennedy, 73 Wash. 503, 131 P. 1161; Tatum v. Niagara Fire Insurance Co., 43 Wash. 373, 86 P. 660.

■ In this case the service was had under that provision of section 226 (9) which provides for service on "any agent, cashier or secretary thereof," and under the circumstances in the instant case, the selling, shipping, and filling orders of the state liquor control board through its established business machinery, Mr. Sheedy, its representative, with a fixed office and banking facilities, and storing of liquor in the state liquor control board, furnishing inventories direct to the state liquor control board for liquor withdrawn upon its order to the distillery company to supply the state's thirty-nine liquor stores and seventy-one agencies with liquor, the negotiation for and interest in a local brewery by Reifels, large owners of stock and agents of the stated corporate defendant, did warrant service upon George C. Reifel, the general manager of the distillery company, while in this jurisdiction pursuant to and on behalf of the company's business, as its general manager, as the agent of the said defendant under the common law. 14a C. J., page 800.

■ "There is no doubt that if the managing agent is found within the state, service of process may be made on him, for it is not within the power of the corporation, either by its action or non-action to do business in the state without exposing itself to liability to service of process on it therein." 21 R. C. L. § 2897; Henrietta Mining & Milling Co. v. Johnson, supra; 5 S. Dak. 57, 58 N. W. 9, 23 L. R. A. 490, 49 Am. St. Rep. 859. In the Henrietta Mining & Milling Co. Case, supra, the court said:

"If, as contended by the plaintiff in error, the remedy against the foreign corporation be confined to service of process upon such appointed agent, it results that, if the corporation does not choose to file such appointment, intending suitors are confined to the remedy by publication provided by section 712, which, under the decisions of this court, would be ineffectual to sustain a personal judgment. Pennoyer v. Neff, 95 U. S. 714 [24 L. Ed. 565].

"It is incredible that the legislature should have intended to limit its own citizens to such an insufficient remedy, when the corporation is actually doing business in the territory, and is represented there by a manager or local agent."

I do not deem it necessary to be represented by a managing agent constantly in the district, but if the general manager comes into the district where it is doing business, it is just as effectual as though served on a resident agent.

■ Garnishment and attachment are statutory remedies. United States v. Bailey (D. C.) 52 F.(2d) 286. And statutes giving such ancillary remedies should be strictly construed. Dixon v. Corinne Runkel Stock Co. (D. C.) 214 F. 418. The Conformity Statute (28 USCA § 726) provides: "In com-

mon-law causes * * * the plaintiff shall be entitled to similar remedies, by attachment, * * * against the property of the defendant, which are now provided by the laws of the State in which such court is held. * * * "

■ The defendants strongly contend that this is not a common-law cause and is dependent upon statute, and not within the Conformity Statute. The basis of this action is a personal liability created by statute, without providing a remedy. The Supreme Court in Pollard v. Bailey, 20 Wall. (87 U. S.) 521, 527, 22 L. Ed. 376, says: "A general liability created by statute without a remedy may be enforced by an appropriate common-law action." The right is statutory in the instant case, but the remedy to enforce that right is according to the common law. In Quantity of Manufactured Tobacco, 20 Fed. Cas. page 121, No. 11499, judgment was taken on a bond for return of property seized for violation of the internal revenue laws. After return of the execution nulla bona, it was sought to examine the judgment debtor with relation to his property. This was resisted because it was not a "common-law" action (section 727, title 28 USCA). The court held that the expression "common-law actions" has reference to actions at common law as distinguished from equity, admiralty, etc., causes. In Brisenden v. Chamberlain (C. C.) 53 F. 307, the court held that common-law actions mean actions on the law side, as distinguished from the equity, admiralty, or criminal side.

The intent of the Congress is further clarified in section 727, title 28 USCA, where it grants right of execution in common-law actions, as in the preceding section (726) it gives the right of attachment at "common law." The Congress did not contemplate suitors to do an idle thing in pursuing a right to judgment and not have execution process to enforce it, and by analogy, logic, and reason conclude such to be the intent of the Congress as to causes of action with the necessary ancillary attachment.

It is also contended that the attachment must be dissolved because the amount sued for is not definitely specified. This contention cannot obtain, as it is clearly opposed to the holding of the Supreme Court of the state of Washington in State of Washington ex rel. Boyer v. Superior Court for King County, 115 Wash. 359, 197 P. 321.

■ The further contention that by the provisions of section 682, Rem. R. S. Wash., and section 726, title 28 USCA (Conformity Statute), which provides similar preliminary affidavits or proof when similar security is required by such state laws shall be first furnished by the parties first seeking such attachment or remedy, and that since the plaintiff failed to deposit $5 for each garnishment, it must fail. This section can have no application, in view of section 870, title 28 USCA, which provides that no bond or security shall be required from the United States or from anybody acting under its direction, either to prosecute suits or to answer in damages or costs. In case of an adverse decision, such costs as by law are taxable against the United States, or against the party acting by direction, as aforesaid, shall be paid out of the contingent fund of the department under whose direction the proceedings were instituted. This clearly provides ample security for the reimbursement of any garnishee defendants. This section specifically provides all process, and it has been held to so intend in United States v. Kinney (D. C.) 264 F. 542.

■■ It is sought to dismiss the garnishment against the state, in view of the provisions of the Laws of 1933, c. 15, p. 136, Laws of Washington, which provides, in substance, that neither the state, nor counties, cities, towns, school districts, nor municipal corporations shall be subject to garnishment. The state has submitted to this jurisdiction, and this question the defendants may not raise. However, this act, supra, applies only when the state acts in its sovereign capacity. In the transaction disclosed by the writ and answer the state has entered the relation of a private citizen in carrying on a business independent of its sovereignty, and may not invoke the provisions of the law with relation to its sovereignty. Ohio v. Helvering, 292 U. S. 360, 54 S. Ct. 725, 78 L. Ed. 1307; State of Georgia v. Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. Ed. 796; Wallace v. U. S. S. B. E. F. C. (D. C.) 5 F.(2d) 234.

■ Nor is the contention that the attachment must be dissolved because the amount sued for is not definitely specified. There is no speculative element in the amount of recovery. It is a matter which is wholly within the knowledge of the defendants and of which it knows, and the exact amount, if any shipments were made, is unknown to the plaintiff. The recovery is a matter of bookkeeping. It is not like a personal injury action, where the amount is not capable of exact proof. This is clearly untenable. State of Washington ex rel. Boyer v. Superior

Court of King County, 115 Wash. 359, 197 P. 321, supra.

The motions of the defendant Brewers & Distillers of Vancouver, Limited, and the Vancouver Breweries, Limited, are granted, and the motions of the British Columbia Distillery Company, Limited, denied as to the service, and, likewise, upon the discharge of the writs of garnishment.